FILED

IN THE UNITED STATES DISTRICT COURT  2015 JUL -8  AM 11: 47
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION   CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
DEPUTY

CARLOS CHACON,

                         **Plaintiff,**

-vs-                                                   **Case No.  A-12-CA-226-SS**

THE CITY OF AUSTIN, TEXAS, OFFICER
ERIC COPELAND, and OFFICER RUSSELL
ROSE,

                          **Defendants.**

## O R D E R

      BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Plaintiff Carlos Chacon's Motion for Attorney Fees & Expenses [#93], Defendant Russell Rose's Response [#96] thereto, Plaintiff's Reply [#97] thereto, and the Affidavit of Broadus A. Spivey in Support of Motion for & Memorandum in Support of Attorney Fees & Expenses [#94]. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

      On March 13, 2012, Plaintiff Carlos Chacon filed suit against Defendants the City of Austin, Texas, Officer Eric Copeland of the Austin Police Department, and Officer Russell Rose of the Austin Police Department, bringing (1) a 42 U.S.C. § 1983 claim against the officers for excessive force, (2) state law negligence claims against the officers in their individual capacities, (3) § 1983 claims against the City for failure to train and failure to supervise, and (4) a state law claim against the City for vicarious liability for the officers' alleged negligence under § 101.021(2) of the Texas

Civil Practice and Remedies Code.  Plaintiff claimed Officers Rose and Copeland used excessive force in violation of his Fourth and Fourteenth Amendment rights when arresting him on the evening of April 29, 2011, after Plaintiff called the police to report "suspicious behavior and happenings" at the Studio 6 Motel in Austin, Texas.  Compl. [#1] ¶ 3.

On May 10, 2012, Defendants filed a motion to partially dismiss for lack of jurisdiction.  *See* Mot. Partial Dismissal [#8].  The Court granted the motion, dismissing the state law negligence claims against the officers in their individual capacities and the § 101.021 claim against the City. *See* Order of Aug. 15, 2012 [#11].  On October 29, 2012, Plaintiff filed his first amended complaint [#20], adding an additional § 1983 claim against the City for negligent hiring and retention.

On December 6, 2012, the City filed its motion for judgment on the pleadings [#28] (sealed). The Court granted the City's motion in part and denied it in part, allowing the failure to train and supervise and negligent hiring and retention claims to proceed, but dismissing Plaintiff's claim for exemplary damages against the City.  *See* Order of Dec. 28, 2012 [#33].

On April 8, 2013, the City and the officers filed separate motions for summary judgment. *See* City's Mot. Summ. J. [#39]; Copeland/Rose Mot. Summ. J. [#40].  The Court granted the City's motion for summary judgment, finding Plaintiff failed to produce evidence showing the training programs used by the Austin Police Department were inadequate, failed to demonstrate deliberate indifference, and failed to produce evidence indicating the Austin Police Department's training programs were the moving force behind Plaintiff's injuries.  *See* Order of May 21, 2013 [#46] at 12. Additionally, the Court found Plaintiff failed to present evidence sufficient to allow any reasonable juror to conclude it was plainly obvious each officer would go on to use excessive force during an arrest.  *See id.* at 15.  However, the Court denied the officers' motion for summary judgment,

-2-

concluding Plaintiff produced sufficient evidence not only to create a genuine issue as to whether the officers violated his constitutional rights, but also to overcome the officers' qualified immunity defense. *See id.* at 25–28.

On June 12, 2013, the officers took an interlocutory appeal from the Court's order denying their motion for summary judgment on the basis of qualified immunity. Plaintiff retained appellate specialists from the law firm of Kuhn Hobbs PLLC to represent him during the appeal. Following oral argument in New Orleans, Louisiana, on September 5, 2014, a panel of the Fifth Circuit affirmed this Court's order denying the officers' motion for summary judgment. *See Chacon v. Copeland*, 577 F. App'x 355 (5th Cir. 2014) (unpublished). The case proceeded to jury trial on two issues: (1) whether the officers used excessive force and (2) whether the officers were entitled to qualified immunity for their actions.

Jury selection took place on the morning of March 2, 2015, with trial beginning immediately thereafter. Plaintiff rested his case the following afternoon, March 3, 2015. After Plaintiff rested the officers moved for judgment as a matter of law, which the Court denied. The trial continued until the officers rested their case, also on March 3, 2015. The officers renewed their motion for judgment as a matter of law, and the Court carried the motion. The case was submitted to the jury the following morning, March 4, 2015.

On March 5, 2015, the jury returned a verdict finding both officers used excessive force during the arrest in violation of Plaintiff's constitutional rights, and further finding while Officer Copeland was entitled to qualified immunity for his actions, Officer Rose was not. *See* Verdict Form [#83] at 1–2. The jury awarded Plaintiff $1 million in damages for his past and future physical pain, mental anguish, and loss of capacity for enjoyment of life. *See id.* at 3. Following the verdict,

Plaintiff filed his motion for entry of judgment, *see* Mot. J. [#84], and Officer Rose filed his renewed motion for judgment as a matter of law or, alternatively, motion for new trial or remittitur, arguing the verdict against Officer Rose was not supported by any evidence and was against the great weight of the evidence. *See* Renewed Mot. J. [#85] at 1. Alternatively, Officer Rose requested a new trial on the issue of damages or remittitur of the $1 million damage award as excessive and unsupported by the evidence. *Id.*

On April 30, 2015, the Court granted in part and denied in part Officer Rose's renewed motion for judgment as a matter of law, concluding while the jury's verdict on liability was supported by the evidence, the $1 million damage award was clearly excessive, and the record could bear a total award of no more than $60,000. *See* Order of Apr. 30, 2015 [#90] at 20. Accordingly, the Court gave Plaintiff two options: either accept the Court's award as remitted, or proceed to a new trial on the issue of damages. *Id.* Plaintiff thereafter elected to accept the Court's remittitur.

Turning to the instant motion: on May 27, 2015, Plaintiff moved for an award of attorney's fees pursuant to 42 U.S.C. § 1988(b). Plaintiff requests $189,414.86 in fees and expenses, broken down by 150.4 hours billed by Broadus Spivey, lead counsel, at $500 per hour; 143.9 hours billed by Erica Grigg, associate counsel, at $125 per hour; 74 hours billed by Elizabeth Denson, paralegal, at $85 per hour; 21.75 hours billed by Katie Love, technical clerk, at $18 per hour; and $89,545.86 in expenses.[1] While Defendant does not contest Plaintiff's right to a fee award, he argues the Court should reduce the amount of fees Plaintiff claims. *See* Resp. [#96] at 2.

---

[1] $2,891.82 of the expenses claimed are court costs. As explained *infra*, court costs are separate from an award of expenses under § 1988 and are therefore disallowed on the present motion, but the Court will permit Plaintiff to file a Bill of Costs following entry of this Order. *See infra* section II.C.

## Analysis

### I.      Motion for Attorney's Fees—42 U.S.C. § 1988

Under 42 U.S.C. § 1988, a "prevailing party" in an action brought under 42 U.S.C. § 1983 may be awarded, in the court's discretion, reasonable attorney's fees.  42 U.S.C. § 1988; *Univ. Amusement Co., Inc. v. Vance*, 587 F.2d 159, 172 (5th Cir. 1978).  To qualify as a prevailing party, the plaintiff (1) "must achieve judicially-sanctioned relief, (2) the relief must materially alter the legal relationship between the parties, and (3) the relief must modify the defendant's behavior in a way that directly benefits the plaintiff at the time the relief is entered." *Petteway v. Henry*, 738 F.3d 132, 137 (5th Cir. 2013).  To "prevail" under § 1988, the party seeking fees need not procure a favorable judgment on every claim.  *Jenevein v. Willing*, 605 F.3d 268, 270 (5th Cir. 2010).

### II.     Calculation of Attorney's Fees

The Fifth Circuit uses a two-step process to calculate attorney's fees.  *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999).  First, a court calculates a "lodestar" figure "by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work." *Id.*  In so doing, the court considers whether the attorneys demonstrated proper billing judgment by "writing off unproductive, excessive, or redundant hours." *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996).  The plaintiff has the burden of showing the reasonableness of the hours billed and proving the exercise of billing judgment. *Id.* at 770.

After calculating the lodestar, the court may increase or decrease it based on the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).  *Heidtman*, 171 F.3d at 1043.

Those factors are: (1) the time and labor required by the litigation; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the award in similar cases. *Id.* at 1043 n.5 (citing *Johnson*, 488 F.2d at 717–19).

Where a prevailing party was only partially successful, the court must consider two further issues: first, the relationship between the claims on which the plaintiff succeeded and those on which he did not, and second, whether the plaintiff achieved a level of success that makes the hours expended a satisfactory basis for a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Specifically, in a suit where the plaintiff presents "distinctly different claims for relief that are based on different facts and legal theories[,] . . . work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved"; thus, no fee award for that work is permitted. *Id.* at 434–35 (internal quotes omitted). In contrast, where the suit "involve[d] a common core of facts" or was "based on related legal theories," the court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435.

Here, Defendant's objections to the amount claimed by Plaintiff can be divided into several general categories: first, Defendant claims many of the hours Plaintiff claims were unreasonable or unnecessary; second, Defendant argues Mr. Spivey's $500 hourly rate is excessive; third, Defendant contends Plaintiff's "limited success" warrants a reduction in the lodestar; and fourth, Defendant

contends many of Plaintiff's claimed expenses, including appellate attorney's fees, are unreasonable, excessive, or vague.  The Court addresses each objection in turn.

## A.    Reasonableness of Hours Claimed for Work Performed

Defendant argues many of the hours claimed by Plaintiff were unreasonable or unnecessary because they did not contribute to Plaintiff's success in the litigation.  Specifically, Defendant contends Plaintiff should not or cannot collect for Mr. Spivey and Ms. Griggs's hours expended upon: (1) travel time; (2) observing the performance of other attorneys; (3) meeting with witnesses who did not testify or appear; (4) meeting with persons in the media; (5) meeting with "other unrelated persons"; and (6) clerical tasks.  Defendant also claims Plaintiff may not recover 63 of his requested 74 hours of paralegal time because the billing entries are either vague or reflect clerical, not legal, work.  Finally, Defendant argues expenses for technical assistance at trial are not recoverable.

### 1.    Mr. Spivey and Ms. Griggs's hours

First, the Court agrees the 9.4 hours billed for Mr. Spivey's travel time to and from New Orleans for oral argument on the interlocutory appeal should be reduced.  Mr. Spivey did not deliver the oral argument before the Fifth Circuit, and Plaintiff does not refute Defendant's statement "[t]here is no indication that [Mr. Spivey] worked on this case during the travel time[.]" Resp. [#96] at 5.  Accordingly, the Court will reduce the travel time claimed by 50%, or 4.7 hours. *See, e.g.,* *United States v. Cmty. Health Sys., Inc.*, No. Civ. A. H-09-1565, 2015 WL 3386153, at *15 (S.D. Tex. May 4, 2015) (unpublished) (collecting cases noting district court did not abuse its discretion in discounting travel time by 50%);  Mot. Att'y's Fees [#93-1] Ex. 1 (Spivey Hourly Record) at 4.

Second, time spent observing the performance of other attorneys is not recoverable, and must

be disallowed. *Flowers v. Wiley*, 675 F.2d 704, 705 (5th Cir. 1982). Defendant argues Mr. Spivey's hours billed while observing oral argument at the Fifth Circuit and Ms. Griggs's hours claimed for attending depositions and trial are therefore not recoverable, and Plaintiff does not respond to Defendant's argument in his reply. The Court agrees there can be no recovery for time spent in the role of a passive observer. Accordingly, the Court will deduct 4.3 hours from Mr. Spivey's time, the total amount claimed for "Oral Argument at the Fifth Circuit" on February 4, 2014, *see* Spivey Hourly Record at 4, and a total of 40.07 hours from Ms. Griggs's time, accounting for 10.07 hours billed attending depositions conducted by Mr. Spivey[2] and 30 hours billed during trial.[3] *See* Mot. Att'y's Fees [#93-2] Ex. 2 (Griggs Hourly Record) at 2–6. However, the Court will not reduce the hours claimed by Ms. Griggs on March 5, 2015, the final day of jury deliberations, as the Court's minutes reflect Ms. Griggs was the only attorney present on behalf of Plaintiff while waiting for the verdict that day.

The Court further notes that according to her time sheet, Ms. Griggs worked for 24 hours on March 3, 2015, the first day of trial. Twelve of those hours have already been accounted for above; the remaining 12 are listed as "Review Defendant's Motion for Judgment as a Matter of Law; catalogue and save electronic and hard copies for reference during the remainder of the trial." *Id.*

---

[2] Comprised of 5.62 hours billed on January 22, 2013, 1.05 hours billed on February 4, 2013, 2.37 hours billed on February 5, 2013, and 1.03 hours billed on February 26, 2015. *See* Mot. Att'y's Fees [#93-2] Ex. 2 (Griggs Hourly Record) at 2, 3, 4.

[3] Comprised of 11 hours billed on March 2, 2015, 11 hours billed on March 3, 2015, and 8 hours billed on March 4, 2015. *See* Griggs Hourly Record at 5, 6. The disallowed hours are 11 rather than 12 on March 2 and 3 because the Court will allow one hour per day for the claimed client conferences claimed on March 2 and 3. The Court will not allow an hour for "conference with client after the jury is out for deliberation," claimed on March 4, as that entry is vague. *See id.* at 5.

at 5–6.  Given the obviously inaccurate reporting (which Defendant pointed out and Plaintiff did not correct in his reply), the Court disallows 11 of the 12 hours claimed.

Third, the Court agrees Plaintiff is not entitled to recover hours expended meeting with witnesses who did not testify or appear in the case, persons from the media, or persons unrelated to the litigation, as any contribution those hours made toward Plaintiff's success, if any, is *de minimus*. While Plaintiff argues hours spent with the media should be recoverable because the public benefit of civil rights litigation is increased through public awareness, the Court notes hours with the media are also free advertising for law firms and attorneys.  In the opinion of the Court, hours like these are among those appropriately written off in the exercise of billing judgment.  Accordingly, the Court disallows 4.7 hours from Mr. Spivey's time[4] and 2.25 hours from Ms. Griggs's time.[5]

Fourth, Defendant argues both Mr. Spivey and Ms. Griggs's hourly records reflect a number of hours expended on clerical tasks for which they should not be compensated.  Again, Plaintiff fails to respond to this argument in his reply.  At minimum, clerical work "should be compensated at a different rate from legal work." *Walker*, 99 F.3d at 770.  Even were the Court to determine such work was properly recoverable *and* to arbitrarily assign an appropriate dollar amount per hour for that work, it would be difficult to ascertain precisely how much time the attorneys spent engaged in

---

[4] Comprised of 0.75 hours claimed on January 14–15, 2012, 0.5 hours claimed on February 17, 2012, 1.2 hours claimed on November 20, 2013, 1 hour claimed on February 28, 2015, 0.25 hours claimed on October 17, 2011, 0.25 hours claimed on January 18, 2014, and 0.75 hours claimed on November 17–18, 2014. Spivey Hourly Record at 1, 4, 5.  The Court will permit 0.25 of the 0.75 hours claimed on February 17, 2012, as that entry is block-billed and reflects both a conference with an expert who did not appear in this case and "[e]mail correspondence to Don Field, APD, . . . requesting documents, records, and video concerning Chacon case." Spivey Hourly Record at 1. The February 28, 2015 entry is also block-billed; 6.5 hours are claimed for "Trial preparation—organizing witnesses—questions to cover—review video tapes. . . .  Email correspondence with Amy Kamp (Austin Chronicle) regarding Message from President (APA) flyer; discussion with staff and client regarding how this flyer affects Chacon trial[.]"  Spivey Hourly Record at 5.  The Court thus disallows one hour of the 6.5 hours to account for correspondence with the media.

[5] Comprised of 1.75 hours claimed on July 24, 2012, and 0.5 hours claimed on March 6, 2015.  Griggs Hourly Record at 1, 6.

clerical work given the attorneys' use of block billing—entering multiple tasks under a single unit of time rather than itemizing their time by single task. *See* Spivey Hourly Record at 6 (including "catalogue and save electronic and hard copies" as but one portion of the explanation given for multiple time entries); Griggs Hourly Record at *passim* (same, and block-billing for "prepar[ing]" documents "for delivery . . . via USPS," faxing and "prepar[ing] documents to be sent," "hand deliver[y]" of documents, "organiz[ing]" documents, and "transcrib[ing]" videos). The Court will deal with the block-billing problem in a moment. Ms. Griggs's time sheet does contain 10.5 hours of clerically-oriented entries which are not block-billed,[6] however, and the Court disallows them not only because they are clerical and Plaintiff has failed to bill them at a different rate from legal work, but also because several are vague and/or duplicative.

The hourly records submitted by Plaintiff further reveal Mr. Spivey and Ms. Griggs engaged in some duplicative activity. For example: Mr. Spivey's hourly record, like Ms. Griggs's, accidentally records a total of 24 hours billed on March 3, 2015, the first day of trial, for performing precisely the same tasks. *Compare* Spivey Hourly Record at 5, *with* Griggs Hourly Record at 5. The Court has already disallowed all but one of those hours for Ms. Griggs. While the Court will allow the 12 hours claimed for Mr. Spivey's work at trial on March 3, the Court must disallow as a typographical error and as duplicative the additional 12 hours claimed that same day for "review" of Defendants' motion for judgment as a matter of law. *See* Spivey Hourly Record at 5. Further, Mr. Spivey and Ms. Griggs billed 1.5 and 1.25 hours, respectively, on "review[ing]" the same

---

[6] Specifically: 1.5 hours billed February 1, 2013; 2 hours billed February 4, 2013; 0.25 hours billed February 6, 2013; 2 hours billed February 12, 2013; 0.25 hours billed March 1, 2013; 0.25 hours billed March 4, 2013; 1 hour billed March 27, 2013; 0.25 hours billed April 11, 2013; 2 hours billed February 27, 2015; and 1 hour billed March 1, 2015. Griggs Hourly Report at 3, 4, 5.

documents related to post-trial motions practice. *Compare* Spivey Hourly Record at 6, *with* Griggs Hourly Record at 6. Particularly given the fact that appellate counsel—not Mr. Spivey or Ms. Griggs—was primarily responsible for researching and drafting Plaintiff's post-trial briefing, Mr. Spivey's 1.5 hours engaged in "review" of the same documents reviewed by Ms. Griggs are disallowed as duplicative.

Finally, the Court finds block billing in the attorneys' hourly records warrants an additional reduction in the number of hours for which Plaintiff may recover. Block billing is disfavored because it impairs the district court's ability to evaluate the reasonableness of hours expended on a particular task. *Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-CV-0913-D, 2005 WL 6789456, at *4 (N.D. Tex. Dec. 20, 2005) (collecting cases). Disallowing all block-billed hours, however, is not an appropriate remedy; rather, "most courts reviewing block-billed time entries have performed a percentage reduction either in the number of hours or in the lodestar figure." *Id.* (collecting cases). Upon review of the record, the Court has determined a reduction of 10% of the total number of hours awarded for Mr. Spivey and Ms. Griggs's time is appropriate.

### 2. Mr. Spivey's hourly rate

As previously noted, Defendant argues Mr. Spivey's hourly rate of $500 is unreasonable and should be reduced to $350.[7] Reasonable hourly rates are determined by looking to the prevailing market rates in the relevant legal community for similar services by attorneys of reasonably comparable skills, experience, and reputation. *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th

---

[7] Defendant does not object to Plaintiff's claimed hourly rates for Ms. Griggs or for Ms. Denson, paralegal; the Court finds those hourly rates to be in accord with the prevailing market rates. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984) (stating reasonable fees under § 1988 are calculated according to prevailing market rates in the relevant community); *see also* Spivey Aff. [#94] ¶ 7 (averring hourly rates claimed by Plaintiff are within customary market rates).

Cir. 2011). In support of Mr. Spivey's claimed hourly rate, Plaintiff submits only Mr. Spivey's affidavit, which indicates Mr. Spivey has 53 years of experience practicing in Texas and has in that time tried over 350 jury trials. Mr. Spivey avers his hourly rate is in accord with the rate "customarily charged in this area for the same or similar services by attorneys with my experience (and their experience) and our respective reputation and ability[.]" Spivey Aff. [#94] ¶ 7.

Arguing $500 is too high a rate, Defendant points to a 2013 survey of hourly billing rates published by Texas Lawyer which shows the median hourly billing rate for an equity partner in the Austin/San Antonio area is $353. *See* Resp. [#96-1] Ex. A at 3. Given the rapid growth within the Austin area during the last several years, however, the Court questions the accuracy of two-year-old data. Further, the survey does not account for the years or type of experience of any particular equity partner, *see id.*, and Mr. Spivey's experience is relevant and extensive. However, it was Plaintiff's burden to produce evidence Mr. Spivey's rate is in line with rates prevailing in the community, *McClain*, 649 F.3d at 381, and courts in this district have reduced challenged hourly rates where the prevailing party provided no evidence other than the attorney's own affidavit, *see Denner v. Tex. Dep't of Criminal Justice*, No. SA-05-CA-184-XR, 2007 WL 294191, at *4 (W.D. Tex. Jan. 29, 2007) (reducing rate by $25 per hour). Because Plaintiff has produced no evidence of the reasonableness of Mr. Spivey's fee other than his own affidavit, the Court will reduce Mr. Spivey's hourly rate to $475.

### 3. Paralegal and technical assistant's hours

Fees for paralegal time are recoverable if such is the customary practice in the relevant legal market. *Walker*, 99 F.3d at 773. There is no dispute that billing for paralegal time is customary in the Austin legal market. However, "[p]aralegal work can only be recovered as attorney's fees if the

work is legal rather than clerical." *Vela v. City of Hous.*, 276 F.3d 659, 681 (5th Cir. 2001); *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982). Many of the hours claimed by Plaintiff for paralegal work concern electronically filing various documents, and the Court agrees with Defendant that this work is clerical. *See Dinet v. Hydril Co.*, Civil Action No. 05-3778, 2006 WL 3904991, at *8 (E.D. La. Nov. 22, 2006) (unpublished) ("Clerical work includes copying, typing, labeling, faxing, mailing, filing, and/or delivering pleadings/documents."). All of the hours claimed for electronic filing are paired with the vague statement "[m]ade final edits"; as it is not possible to tell whether these edits are substantive or technical, the Court disallows all of the hours claimed including "final edits" and electronic filing as clerical and/or vague, a total of 17.2 hours.[8] The 3.25 hours claimed on September 23, 2013, for "[p]repar[ing] paper copies" of the appellate brief to send to the Fifth Circuit and "[c]opies, punching, binding, mailing" are also disallowed as clerical. *Id.* at 1.

Further, as Defendant points out, a number of the paralegal time entries—which also happen to be the four largest blocks of paralegal time billed—are extremely vague, described only as "[a]ssist attorneys with all trial related needs." Mot. Att'y's Fees [#93-3] Ex. 3 (Paralegal Hourly Record) at 2. In his reply, Plaintiff does not elaborate upon the function actually performed by the paralegal at trial. Consequently, the Court disallows the 41.75 hours of paralegal time claimed during March 2–5, 2015, for vagueness.

---

[8] Comprised of 1.3 hours claimed on May 23, 2012; 1.25 hours claimed on October 29, 2012; 1.4 hours claimed on December 13, 2012; .75 hours claimed on March 25, 2013; 2.25 hours claimed on April 22, 2013; 1.25 hours claimed on July 18, 2013; 2.75 hours claimed on September 18, 2013; 1 hour claimed on October 30, 2013; 0.75 hours claimed on March 13, 2015; 1.25 hours claimed on March 26, 2015; 1.75 hours claimed on March 30, 2015; and 1.5 hours claimed on May 12, 2015. *See* Mot. Att'y's Fees [#93-3] Ex. 3 (Paralegal Hourly Record) at 1, 2.

Finally, Defendant argues Plaintiff cannot recover fees for technical assistance, as the work of a technical assistant is akin to clerical work and is part of the attorney's overhead. Plaintiff does not respond to this argument in his reply. The Court agrees with Defendant. *See Williams v. Shinseki*, No. 09-1020 E, 2011 WL 2877774, at *5 (Vet. App. July 20, 2011) ("Expenses for technical work and other work that may be performed by support staff are within the overhead component of the lawyer's fee." (internal quotation omitted)). Plaintiff may not recover the 21.75 hours of technical support claimed as part of his fee award.

Based on all of the above, the Court arrives at a preliminary estimate of $62,681 for the portion of the fee award attributable to hours expended by Mr. Spivey, Ms. Griggs, and Ms. Denson.

**B.      Plaintiff's Success**

Defendant next argues Plaintiff should not recover for hours expended on his unsuccessful state law tort claims against Rose and Copeland and unsuccessful § 1983 claims for failure to train, improper hiring, and improper supervision against the City of Austin. Plaintiff contends those hours are recoverable because he "achieved substantial rather than limited success" and in any event, his unsuccessful claims share "a common core of facts and legal theories with the successful claim." Reply [#97] at 5, 6. It is true that Plaintiff's unsuccessful claims for inadequate training and supervision and negligent hiring and retention are predicated upon the existence of a constitutional violation. *See Mace v. City of Palestine*, 333 F.3d 621, 625 (5th Cir. 2003) (citing *City of L.A. v. Heller*, 475 U.S. 796, 799 (1986)) (noting a municipality may not be held liable under § 1983 where no constitutional deprivation has occurred). However, to establish the City's liability under § 1983, Plaintiff was required to show far more: not only the violation of a constitutional right, but also that an official policy promulgated by the City's policymaker was the moving force behind that violation.

-14-

*See Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009). Additionally, to recover for inadequate training and supervision, Plaintiff was required to produce evidence regarding the Austin Police Department's relevant training programs, and to recover for negligent hiring and retention, Plaintiff was required to prove "a strong connection between the background of [the officers] and the specific violation alleged." *Gros v. City of Grand Prairie*, 209 F.3d 431, 434 (5th Cir. 2000) (citation omitted). While related to the officers' use of excessive force, these causes of action require proof of different, additional facts and rest upon different legal theories than Plaintiff's excessive force claim.

In light of the above and given that Plaintiff ultimately succeeded on only one of his claims against only one of the three defendants against whom he brought suit, the Court finds a 10% reduction in the total amount of the lodestar appropriately accounts for the degree of success Plaintiff obtained. *See Hensley*, 461 U.S. at 436–37 (explaining had civil rights plaintiffs prevailed on only one of their six claims, a fee based upon the total number of attorney hours expended would have been excessive); *id.* ("The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success."). The 10% reduction brings the total amount of the lodestar to $56,412.90.

## C.      Out-of-Pocket Expenses

Reasonable out-of-pocket expenses, including charges for photocopying and travel, are recoverable in § 1988 attorney's fee awards because they are part of the expenses normally charged to a client. *Assoc. Builders & Contractors of La., Inc. v. Orleans Parish Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990). Any award of expenses is committed to the district court's discretion. *Id.* The

Court agrees with Defendant that Plaintiff's claimed out-of-pocket expenses are excessive, as a number of the expenses claimed by Plaintiff are not allowable or subject to reduction.

### 1.   Appellate attorney's fees and costs

First, the Court finds Plaintiff's claimed expenses for appellate attorney's fees and costs excessive.   Prevailing parties are entitled to fees for both trial and appellate work, *Norris v. Hartmarx Specialty Stores, Inc.*, 913 F.2d 253, 257 (5th Cir. 1990), and courts assess the reasonableness of fees at the appellate level under the same framework used to assess fees at the trial level, *see Morrow v. Dillard*, 580 F.2d 1284, 1300 (5th Cir. 1978).   Here, Plaintiff claims $62,179.52 in appellate attorney fees and costs, broken down by 128.2 hours billed by Kurt Kuhn, lead appellate counsel, at $400 per hour; 5.8 hours billed by Lisa Bowlin Hobbs, a partner whose role appears limited to "review and revis[ion]" of Plaintiff's brief on appeal, at $300 per hour; 35.7 hours billed by Matthew Ploeger, of counsel, at $250 per hour; and $234.52 in Westlaw expenses.   *See* Mot. Att'y's Fees [#93-5] Ex. 5 pp. 5–13 (Appellate Billing Record) at 7, 9–10, 12–13.   Based on the materials submitted, it appears appellate counsel played a role during two different phases of the case: the interlocutory appeal and post-trial motions practice.   *See* Mot. Att'y's Fees [#93-5] Ex. 5 pp. 1–4 (Expense Ledger) at 1.

The Court first finds a reduction in the hourly rates charged by appellate counsel is appropriate, as Plaintiff includes no affidavits from appellate counsel supporting their claimed hourly rates or detailing their relevant experience.   As such, Defendant argues each of the three appellate attorneys' hourly rates should be reduced by $50.   Plaintiff does not respond to Defendant's argument in his reply.   Accordingly, the Court reduces the hourly rate for Kuhn, Hobbs, and Ploeger by $50 each, for an hourly rate of $350, $250, and $200 per hour, respectively.

Further, the Court finds it appropriate to reduce the appellate lodestar, as the appellate billing records demonstrate a failure to exercise billing judgment. Concerning the interlocutory appeal, and based upon the undersigned's experience performing similar tasks, it appears to the Court the amount of time billed was excessive. Appellate counsel billed a total of 76.1 hours on tasks related to drafting the brief, and a total of 38.6 hours (excluding 4.8 hours for travel) in preparing for and participating in oral argument. The bulk of the billing entries comprising these hours are vaguely described and duplicative, notated only as "review," "revis[ion]," and "research" for the brief or "prepare for oral argument," "legal research regarding same," and "review record for same." Appellate Billing Record at 5–6, 8. Additionally, most of the entries in the appellate billing records indicate counsel spent time performing "legal research"—despite the fact both the Court and trial counsel conducted and compiled most, if not all, of the authorities relevant to the qualified immunity question during the summary judgment phase. Further, a few of the billed hours reflect potentially clerical work, such as "finaliz[ing] and fil[ing]" the brief. Appellate Billing Record at 5–6. The same problems obtain in the hours logged during post-trial motions practice: 25 hours are billed on "[d]raft[ing the] response" to Defendant's renewed Rule 50 motion, "legal research regarding same," and "finaliz[ing] same for filing." *Id.* at 11.

Given these deficiencies, the Court finds Plaintiff has failed to demonstrate the reasonableness of the hours billed by appellate counsel. The proper remedy when plaintiffs fail to carry their burden to demonstrate billing judgment "is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment." *Walker*, 99 F.3d at 770 (reducing the hours awarded by 15%). Upon review of the record, the Court has determined a reduction of 15% of the total number of hours awarded for appellate counsel's work is appropriate. Based on all of

the foregoing, the Court arrives at a preliminary estimate of $45,441 as reasonable attorney's fees for appellate counsel's work during both the interlocutory appeal and post-trial motions practice.

The Court further finds a further downward departure in the lodestar is warranted by "the time and labor required" and "the novelty and difficulty of the questions," *see Johnson*, 488 F.2d at 717–18, as the interlocutory appeal to the Fifth Circuit was a single-issue appeal: the only question was whether Officers Copeland and Rose were entitled to summary judgment on the basis of qualified immunity. *See Chacon v. Copeland*, 577 F. App'x 355 (5th Cir. 2014) (unpublished). Additionally, it is clear the right to be free from excessive force during an investigatory stop or arrest was clearly established at the time of Chacon's arrest; thus, the only element of the qualified-immunity inquiry truly at issue was whether Chacon adduced evidence sufficient to create a dispute of fact as to whether the officers violated his constitutional rights. *See id.* at 363. Similarly, although Plaintiff filed a motion for entry of judgment and defended both a renewed Rule 50 motion and a motion for remittitur following trial, Plaintiff's motion for entry of judgment was only four pages long, and Defendant's motions did not present questions so novel or difficult as to warrant over $20,000 in fees and expenses, as Plaintiff requests. *See* Expense Ledger at 1. The Court concludes the appropriate course of action is to reduce the award by one-third to account for the issues outlined above, bringing the total to $30,294.

Finally, the $234.62 in appellate expenses claimed by Plaintiff is comprised of three entries labeled "Westlaw charges—out of plan." *Id.* at 10, 12. The nature and importance of this "out of plan" research material is not clear to the Court; thus, these expenses are disallowed. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 326 (5th Cir. 1995) ("The district court may properly reduce

or eliminate hours when the supporting documentation is too vague to permit meaningful review.").

Accordingly, the Court awards a total of $30,059.38 in appellate fees and expenses.

### 2.    Other expenses

First, as Defendant correctly points out, Plaintiff cannot recover his expert fees and costs. Expert fees and costs are not recoverable in § 1983 claims. *See* 42 U.S.C. § 1988(c) (permitting recovery of expert fees "in any action or proceeding to enforce a provision of section 1981 or 1981a or this title"). Thus, $15,052.30 must be deducted from Plaintiff's claimed expenses. *See* Expense Ledger at 2.

Additionally, the Court notes several of Plaintiffs' itemized "expenses," including the amounts claimed for "court filing," deposition transcripts, and a transcript of the trial, are court costs, not expenses. *See* 28 U.S.C. § 1920 (itemizing types of court costs); *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) (explaining under § 1988, "[o]ut-of-pocket litigation expenses are reimbursable as part of the attorneys' fee, distinct from the costs . . . awarded . . . under 28 U.S.C. § 1920"); *see also* 10 WRIGHT & MILLER ET AL., FED. PRAC. & PROC. CIV. § 2666. To request taxation of court costs, Plaintiff was required to file a Bill of Costs with the Court within fourteen days following entry of this Court's final judgment, as is required by the Local Rules of this District. *See* Local Rule CV-54(a). Plaintiff did not do so. The Court will permit Plaintiff to file a Bill of Costs with the Court within seven (7) days from the date of entry of this Order, and Defendant will thereafter be permitted to file any objections thereto. The expenses for "court filing," deposition transcripts, and "transcript of trial on merits," totaling $5,281.08, are therefore disallowed on the instant motion.

Plaintiff claims $523.52 in FedEx expenses, labeled "Fedex to George Kirkham," "George Kirkham," and "Two Fedexes to Court of Appeals." As Defendant points out, there is no explanation given as to why Plaintiff incurred such large FedEx expenses, and the Court will therefore disallow them as unreasonable. Similarly, Plaintiff's $617.50 expense for a private process server will be disallowed, as Plaintiff has presented no evidence of "exceptional circumstances" warranting recovery of costs associated with private service of process. *See Marmillion v. Am. Int'l Ins. Co.*, 381 F. App'x 421, 431 (5th Cir. 2010) (unpublished).

Of the remaining items, the Court will permit reimbursement for expenses associated with legal research, obtainment of Chacon's medical records, and travel to Florida for depositions and New Orleans for the interlocutory appeal, with the exception of $715.90 charged for "WestLaw research" and $16.00 charged for "tips–New Orleans trip," for which no further explanation is given and are therefore disallowed as vague. The Court agrees with Defendant that the $2,726.75 claimed for photocopying expenses is excessive; assuming copies cost $0.10 per page, as is typical, Plaintiff does not explain why he needed over 27,000 pages copied. Defendant requests the allowable copying expense be limited to $270. As Plaintiff does not respond to Defendant's objection in his reply, the Court awards Plaintiff $270 in photocopying expenses. Finally, those expenses related to postage are disallowed, as postage is an overhead expense typical to any law practice. Expenses other than appellate attorney fees are therefore limited to $5,066.44.

Consequently, of the $89,545.86 in total expenses claimed, the Court awards $35,595.06.

### Conclusion

The Court therefore awards Plaintiff, pursuant to 42 U.S.C. § 1988(b), a total of $92,007.96, calculated as follows: after the reductions in hours explained in section II.A, there remains 110.88

hours of Mr. Spivey's time, billed at $475 per hour, 72.08 hours of Ms. Griggs's time, billed at $125 per hour, and 11.8 hours of paralegal Denson's time, billed at $85 per hour, for a total lodestar of $62,681; less ten percent ($6,268.10) to account for Plaintiffs' partial victory, bringing the total to $56,412.90; plus $35,595.06 in expenses, for a grand total of $92,007.96.

Accordingly:

IT IS ORDERED that Plaintiff Carlos Chacon's Motion for Attorney Fees & Expenses [#93] is GRANTED IN PART and DENIED IN PART as described in this opinion; and

IT IS FINALLY ORDERED that Plaintiff Carlos Chacon shall file a Bill of Costs within seven (7) days from date of entry of this order, and Defendant shall file any objections thereto within seven (7) days thereafter.

SIGNED this the _8th_ day of July 2015.

_Sam Sparks_
_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE